IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

**STEVEN C. GOODE**
84 W. Green Street
Westminster, Maryland 21157
*Resident of Carroll County*

   Plaintiff,

v.

**CAR WORX, INC.**
8009 Jumpers Hole Roa**d**
Pasadena, Maryland 21122

Serve: Christopher Bauer, R.A.
   1613 Braid Hills Drive
   Pasadena, Maryland 21122

And

**CHRISTOPHER BAUER**
1613 Braid Hills Drive
Pasadena, Maryland 21122

   Defendants.

Jury Trial Requested

Civil Action No.:

**COMPLAINT FOR WAGES OWED**

  STEVEN C. GOODE Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against, CAR WORX INC. and CHRISTOPHER BAUER, Defendants, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md.

1

Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the failure of Defendants, Car Worx, Inc. and Christopher Bauer, to pay Plaintiff all his wages owed. Specifically, Defendants failed to pay Plaintiff properly for overtime hours worked in excess of forty (40) hours per week.

As described herein, Defendant, Car Worx, Inc., is a Maryland-based company, which is in the automobile accessories sales industry. Its principal office and sole location is in Pasadena, Maryland. The company is structured into two departments, Interlock Department and General Services Department and provides various services to their customers including, sales and/or installation of automobile security systems, remote starters, alarms, tires, rims, lift kits, snow plows, salt spreaders, ladder racks and toolboxes, audio and video systems as well as window tinting and ignition interlock systems. To offer these products and to service its customers, Defendants employ different types of employees, including but not limited to Customer Service Representatives, Automobile Technicians and Managers.

Plaintiff worked for Defendants from approximately May 2013 to January 26, 2017. During his employment with Defendants, Plaintiff at various times held the titles of "Customer Service Representative" and "Manager." Plaintiff's actual duties either as a Customer Service Representative or as a Manager did not exempt him from the overtime protections of the FLSA, MWHL, and the MWPCL. For both positions, Plaintiff's duties consisted of running Defendants' front desk. This entailed taking phone calls, scheduling vehicle drop-offs and pick-ups, answering

2

questions regarding Defendants' services and prices, as well as assisting Interlock customers with maintaining their Ignition Interlock Systems.

Because Plaintiff was charged with opening and closing Defendants' shop, Plaintiff was required to be there during all business hours as well as both before and after business hours to complete pre and post-day tasks that could not be accomplished during business hours. Plaintiff's pre-day tasks primarily consisted of turning on Defendants' computer and point of sale systems, counting the drawer, and unlocking the door. Plaintiff's post-day tasks centered on balancing the cash drawer, reconciling the drawer with the receipts for the day, and reporting and investigating any discrepancies and when all was done, closing up the shop.

During the course of his employment, Plaintiff consistently worked in excess of forty (40) hours per week as a result of his excessive workloads as well as the demands of his position with Defendants. As noted above, Plaintiff was required to be on-site during all business hours, as he was required to open and close the shop. This meant that Plaintiff was scheduled to work a minimum of fifty (50) hours per week. However, Defendants failed to properly compensate Plaintiff for all hours worked. Defendants failed to pay Plaintiff time-and-a-half his regular rate of pay for all hours worked over forty (40) each workweek.

Defendants were able to complete these illegal acts by paying Plaintiff under the guise of a salary. However, Plaintiff's duties did not exempt him from the overtime requirements of the FLSA, MWHL, or the wage payment requirements of the MWCPL. Consequently, Plaintiff was entitled to overtime compensation for all hours worked over forty (40) in a workweek as well as the payment of those wages prior to the termination of his employment. Defendants willfully and intentionally misclassified Plaintiff as a salaried employee for the sole purpose of not paying overtime compensation for all hours worked over forty (40) per week. There is no bona fide

dispute that Plaintiff was entitled to overtime premiums for all hours worked over forty (40) in a workweek.

Through these unlawful practices, Defendants evaded the payment of wages owed to Plaintiff, violating the standards set out by the FLSA, MWHL and the MWPCL. To date, Defendants continue to engage in this unlawful activity.

## **THE PARTIES**

1. Plaintiff STEVEN C. GOODE, (hereinafter, "Plaintiff") is an adult resident of Carroll County, Maryland.

2. Defendant CAR WORX, INC.[1] (hereinafter, "Car Worx" or "Defendant") is in the automobile accessories sales industry. Its principal office and sole location is 8009 Jumpers Hole Road, Pasadena, Maryland 21122.

3. Car Worx maintains two (2) distinct departments: an Interlock Department[2] and a General Services Department. Car Worx provides various services to its customers including sales and/or installation of automobile security systems, remote starters, alarms, breathalyzers, tires, lift kits, snow plows, salt spreaders, ladder racks, toolboxes as well as audio and video systems. Car Worx also provides window tinting services.

4. Defendant CHRISTOPHER BAUER (hereinafter, "Bauer" or "Defendant"), is the owner of Car Worx. Bauer is an adult resident of Anne Arundel County. Bauer is directly involved

---

[1] Hereinafter, any reference to Defendants collectively or Car Worx individually shall include Car Worx's corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendants."

[2] Defendant is one of nine (9) Ignition Interlock Install Centers for Alcohol Detection Systems in the state of Maryland.

4

in the formulation and promulgation of the company policies and pay practices that gave rise to this Complaint.

5. Defendants Car Worx and Bauer are joint employers. As owner of Car Worx, Bauer had and exercised the authority to direct Plaintiff's conditions of employment. Both Car Worx and Bauer were the primary beneficiaries of Plaintiff's efforts and labor. Therefore, Defendants Car Worx and Bauer are jointly and severally liable for the damages alleged herein.

6. Due to the nature of their business, Defendants are subject to the FLSA, MWHL and the MWPCL. Defendants' business meets the definition of a retail or service establishment engaged in interstate commerce.

7. Defendants are subject to the FLSA, MWHL and the MWPCL. Defendants' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

8. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce. This is based on the nature of the duties performed by Plaintiff as part of his employment with Defendants.

9. Plaintiff worked for Defendants who, at all times throughout Plaintiff's employment, met the definition of the term "employer" under the FLSA, § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

10. At all times relevant, Plaintiff worked as non-exempt employee for Defendants. The duties assigned to Plaintiff did not satisfy the duties tests contained within any of the exemptions specified in the FLSA, MWHL, or the MWPCL.

11. From approximately May 2013 to January 26, 2017, Plaintiff was employed with Defendants and held the titles of Customer Service Representative and/or Manager.

12. At all times relevant to this Complaint, Defendants controlled the administration of their business and set employee schedules, including those of Plaintiff.

13. Defendants possessed and exercised the authority to determine the hours worked by Plaintiff.

14. Defendants had the authority to control Plaintiff's duties.

15. Defendants had and exercised the power and authority to change Plaintiff's duties.

16. Plaintiff recognized Defendants' authority and obeyed Defendants' instructions.

17. Defendants made all decisions relating to the rates and methods of pay of Plaintiff

## JURISDICTION AND VENUE

18. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

19. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

20. Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

21. Pursuant to 28 U.S.C. § 1391(b) venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

22. This Honorable Court has personal jurisdiction over Car Worx as it (1) is a corporation incorporated under the laws of Maryland and (2) conducts sufficient business within the forum state so as to constitute a submission to its laws.

23. This Honorable Court has personal jurisdiction over Bauer as he is a resident of Maryland.

<b><u>FACTUAL ALLEGATIONS FOR ALL CLAIMS</u></b>

*<u>Employment</u>*

24. In approximately May 2013, Plaintiff was hired by Defendants to work as a Customer Service Representative.

25. In approximately June, 2014, Plaintiff was promoted to the position of Manager.

26. In approximately September, 2015, Defendants hired a new Manager and Plaintiff returned to the Customer Service Representative position. He held this position until his termination on January 26, 2017.

*<u>Duties</u>*

27. Though Plaintiff's title changed during the course of his employment with Defendants, his duties did not change in any significant or meaningful way.

28. During the entirety of his employment with Defendants, Plaintiff regularly opened and closed the shop.

29. Opening the shop consisted primarily of unlocking the front doors, turning on Defendants' point of sale (hereinafter, "POS") system as well as its computer system, and confirming the balance of the cash drawer.

30. Closing the shop primarily entailed balancing the cash drawer, turning off Defendants' POS and computer systems, and locking the door.

31. Plaintiff worked closely with Defendants' customers. He handled most customer service inquiries made by existing customers. Plaintiff typically received these inquiries via telephone calls.

32. These inquiries were generally related to the status of the customers' vehicle.

33. Once Plaintiff received an inquiry, Plaintiff had to stop whatever he was doing and investigate the status of the customer's project.

34. These "investigations" typically entailed discussions with Defendants' mechanics and technicians regarding the status of a particular project.

35. Once the status had been ascertained, Plaintiff would report back to the customer and provide them with an update.

36. Plaintiff was also tasked with answering phone calls regarding new and/or prospective appointments. During these calls, Plaintiff would answer any pricing or logistical questions the customer, or prospective customer had. Plaintiff would also schedule appointments for new interlock installations as well as for other services Defendants offered.

37. Many of the phone calls Plaintiff was tasked with responding to were related to customer issues with the Ignition Interlock systems. During these phone calls, Plaintiff was required to answer any questions the customer had, as well as attempt to troubleshoot any problems the customer was experiencing. Plaintiff's attempts at troubleshooting were limited to advice given over the telephone or visual inspections on-site. This troubleshooting did not require any advanced technical knowledge.

38. Plaintiff was also responsible for the monthly Interlock downloads for Interlock customers.

39. These downloads consisted of taking the Interlock device from the customer's vehicle and plugging it into Defendants' computer system.

40. Through an automated process, the data the Ignition Interlock device had recorded over the course of the previous month was downloaded onto Defendants' software and forwarded directly to the Maryland Department of Motor Vehicles.

41. On a daily basis, Plaintiff also performed case searches on the internet in order to find recent convictions of Driving Under the Influence (hereinafter, "DUI"). Once Plaintiff found a recent DUI conviction, Plaintiff prepared a mailing which contained a pamphlet and a coupon for the installation of an interlock system and mailed that to the offender's home.

42. Plaintiff was also responsible for performing the initial intake when Defendants' customers brought their vehicles to Defendants' shop for service. Plaintiff would receive Defendants' customers' vehicles and prepare the necessary paperwork for each job. The paperwork contained details regarding the vehicle's make and model, as well as the work to be performed. Plaintiff would assist Defendants' customers in filling out this paperwork as part of the intake process. Once all the paperwork was properly completed and signed by the customer, Plaintiff would take the customer's keys and release the vehicle to the mechanics in the appropriate department.

43. Plaintiff was also tasked with helping to unload and pack up wheel rims being sent back to vendors and also the merchandizing of new wheel rims that were delivered.

44. As a Manager, Plaintiff performed all the above tasks and additionally worked closely with Defendants' vendors to ensure that the technicians had the supplies they needed to effectively service Defendants' customers. Defendants' mechanics would routinely inform

Plaintiff of the parts they needed to perform a particular job. It was then Plaintiff's responsibility to fill out the appropriate form and submit it to Defendants' vendor/s to order the part.

45. When deliveries arrived, Plaintiff would receive and inspect them in order to confirm the appropriate part and quantity had been delivered and would sign off on the deliveries.

46. As a Manager, at the close of each business day, Plaintiff was responsible for balancing all cash drawers and preparing bank deposits for the next day. This entailed counting the cash in the drawer and reconciling the counted amount with the receipts for the day.

47. While performing his daily tasks, Plaintiff did not require any specialized training or advanced knowledge.

48. Plaintiff had little to no discretion in performing his assigned tasks as Defendant Bauer made all decisions regarding plans policies and procedures.

49. Plaintiff did supervise some employees as a manager. Plaintiff could assign jobs to Defendants' mechanics and would require that the jobs be completed in a particular order. Plaintiff did alert Defendants' mechanics when a vehicle/vehicles were dropped off for the day as well as when the customer was waiting in Defendants' lobby.

50. Plaintiff did not have any input or discretion with regard to any of the terms and conditions of employment for any of Defendants' employees.

51. For the duration of his employment, Plaintiff did not perform any management analysis.

52. Plaintiff did not have the authority to hire or fire any employees.

53. For the duration of his employment, Plaintiff did not interpret any information.

54. For the duration of his employment, Plaintiff did not write any reports.

55. Plaintiff satisfied the requirements of his job and adequately performed his duties to benefit Defendants, as well as Defendants' customers.

### *Wages*

56. For the entirety of his employment with Defendants, Plaintiff was paid as a salaried employee. He received the same bi-weekly payments regardless of the number of hours he worked each week.

57. For the aforementioned work, as both a Customer Service Representative and a Manager, from approximately May 2013 to January 26, 2017, Plaintiff received bi-weekly payments reflecting approximate annual salaries of thirty thousand dollars ($30,000.00) to thirty-two thousand dollars ($32,000.00).

### *Schedule*

58. Plaintiff was assigned to work six (6) days a week. Monday through Friday Plaintiff would work from 10:00 a.m. to 7:00 p.m. On Saturdays Plaintiff would work from 9:00 a.m. to 5:00 p.m. Because Plaintiff was tasked with both opening and closing, Plaintiff was required to be on-site during all hours of operation.

59. Due to his schedule and the demands of his job, both as a Customer Service Representative and as a Manager, Plaintiff would consistently work far more than (40) hours per week. Plaintiff's regular schedule alone required he work a minimum of fifty-three (53) hours per week. However, Plaintiff consistently worked between fifty-five (55) and sixty (60) hours each workweek because of his workload.

## *Overtime*

60. During most pay periods, Plaintiff worked well over forty (40) hours per week. Plaintiff was required to be present during all of Defendants' hours of operation because he was tasked with opening and closing the shop.

61. Defendants' hours of operation were and are Monday through Friday, from 10:00 a.m. to 7:00 p.m., and Saturday from 9:00 a.m. to 5:00 p.m. Thus Plaintiff was scheduled to work a minimum of fifty-three (53) hours.

62. Plaintiff arrived at work prior to the beginning of his scheduled shift and would now and again leave about an hour or two after his scheduled shift ended. This was because Plaintiff's opening and closing requirements sometimes included duties that could not be completed during business hours.

63. Because Plaintiff was responsible for closing the shop most days he had to be the final employee to leave. Defendants required that all jobs scheduled to be completed on a given day be completed prior to the end of that workday. This was the policy regardless of the number of new jobs that came in throughout that day. When jobs were not completed by the end of the scheduled workday, Plaintiff had to stay till the jobs were complete. This was specifically so Plaintiff could lock up the shop once all the mechanics had left for the day.

64. Plaintiff was responsible for balancing all cash drawers and preparing bank deposits for the next day. This contributed to the amount of overtime Plaintiff worked.

65. Plaintiff's regular schedule did not include a designated lunch break and Plaintiff's excessive workload regularly prevented him from taking a regular break of any kind. Plaintiff would normally work straight through his assigned shift without a break. This fact also contributed

to the amount of overtime Plaintiff worked. Defendants were well aware that Plaintiff rarely, if ever, took a break.

66. Understaffing was also a consistent problem Defendants faced. Plaintiff was the only employee scheduled to run the front desk of both the Interlock and General Services departments. This necessarily contributed to Plaintiff's work load and hours on the job, as the amount of business Defendants were doing increased overtime.

67. Regardless of how many hours Plaintiff worked, he was only paid his regular salary.

68. There is no bona fide dispute that Plaintiff is owed overtime wages for all hours worked over forty (40) in a workweek.

69. The duties performed by Plaintiff did not support any exemptions found in the FLSA, MWHL, or the MWPCL.

70. Plaintiff retained no discretion in the manner in which he performed his assigned tasks as Defendants made all decisions regarding the administration and management of their business.

71. Defendants were well aware of the excessive hours that Plaintiff consistently worked. There was however, no time-tracking or time-keeping system in place as Plaintiff was classified as exempt and was not provided a system to clock in and out.

72. Defendants knew that Plaintiff customarily worked well over forty (40) hours per week.

73. Defendants suffered, permitted and in fact required Plaintiff to work these overtime hours without proper compensation.

74. Defendants, acting without good faith, withheld these overtime wages from Plaintiff.

75. Consequently, Plaintiff seeks the wages to which he is entitled and other available relief through this Complaint.

**CAUSES OF ACTION AND VIOLATIONS OF LAW**

**Count I.  Against Defendants Car Worx, Inc. and Christopher Bauer**
*Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff*

76. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

77. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

78. As described above, Plaintiff has not received from Defendants compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendants failed to compensate Plaintiff for these additional hours.

79. Defendants willfully and intentionally failed to compensate Plaintiff for the overtime hours he worked by unjustifiably paying Plaintiff under the guise of a salary.

80. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendants.

81. Under the FLSA, Plaintiff is entitled to additional wages from Defendants to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

**Count II. Against Defendants Car Worx, Inc. and Christopher Bauer**
*Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff*

82. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

83. Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

84. Plaintiff has not received compensation from Defendants reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

85. Defendants willfully and intentionally did not compensate Plaintiff for the overtime hours he worked by unjustifiably paying him under the guise of a salary. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendants.

86. Under the MWHL, Plaintiff is entitled to additional wages from Defendants for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

**Count III. Against Defendants Car Worx, Inc. and Christopher Bauer**
*Violation of the MWPCL: Failure to Pay Wages Owed at the
Termination or End of Employment to Plaintiff*

87. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

88. Plaintiff is entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq.*, which provides that each employer shall pay

15

an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

89. In accordance with §3-505(a), Plaintiff has not received compensation from Defendants for all wages owed for work performed before the termination of his employment. This is specific to Defendants' failure to pay Plaintiff the overtime wages that he is entitled to under both Maryland and Federal law.

90. Defendants willfully and intentionally withheld from Plaintiff the wages owed to him. Plaintiff suffered financial and economic harm as a result of the fact that he was not paid all wages due to him timely and had only partial earnings to pay all regular expenses and living costs.

91. Under the MWPCL, Plaintiff submits that there is no bona fide dispute that he is owed additional wages for work performed while employed by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays for the following relief:

a) Judgment against Defendants for their failure to properly pay Plaintiff in accordance with the standards set forth by the FLSA;

b) Judgment against Defendants for their failure to pay Plaintiff in accordance with the standards set forth by MWHL;

c) Judgment against Defendants for their failure to pay Plaintiff in accordance with the standards set forth by MWCPL;

d) Judgment against Defendants, classifying their conduct as willful and not in good faith;

e) Judgment against Defendants, classifying Plaintiff as a non-exempt employee entitled to protection under the FLSA, MWHL and the MWPCL;

f) An award against Defendants for the amount of unpaid overtime wages owed to Plaintiff, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's regular hourly rate for all overtime hours worked;

g) An award of liquidated or treble damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff, whichever is deemed to be just and equitable by this Honorable Court;

h) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendants; and

i) All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on his behalf.

Respectfully submitted,

*/s/ George E. Swegman*
George E. Swegman, Esquire (#19444)
gswegman@nicholllaw.com
Benjamin L. Davis, III, Esquire (#29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*